**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KENDALL CURRY, | ) | |
| | ) | Civil Action No. 15 – 54J |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| CO LANGLEY, PA MILLER, PA | ) | |
| KAUFMAN, UNIT MANAGER | ) | ECF Nos. 36, 40 |
| FRAZIER, PA WIEMER, PHD MS. | ) | |
| MAHMUD, FORMER | ) | |
| SUPERINTENDENT ROZUM, | ) | |
| CHCA MR. HYDE, PA | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | |
| WEXLER HEALTH SERVICES, | ) | |
| | ) | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kendall Curry ("Plaintiff") is an inmate of the Commonwealth of Pennsylvania

currently confined at the State Correctional Institution at Somerset ("SCI-Somerset"). He

initiated this prisoner civil rights action on March 3, 2015, pursuant to 42 U.S.C. § 1983. The

claims asserted in his Complaint arise out of a slip and fall that occurred at SCI-Somerset on

May 6, 2013. (ECF No. 3.) Plaintiff attached several exhibits to his Complaint, including a

series of grievances (ECF No. 3-1), declarations by other inmates (ECF No. 3-2), and documents

pertaining to a previous action he filed in the Court of Common Pleas of Somerset County (ECF

No. 3-3.) Defendants have filed Motions to Dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6), (ECF Nos. 36, 40), and Plaintiff filed responses in opposition to both Motions, (ECF

Nos. 44, 46). The Motions are now ripe for review.

1

## I.     Plaintiff's Allegations

The following allegations are contained in Plaintiff's Complaint.

Around 11:30 a.m. on May 6, 2013, Plaintiff responded to the call for mainline cafeteria. (ECF No. 3 at ¶¶ 16, 18.)  Plaintiff states that he walked down the steps and slipped "on the undry wax and water on the floor."  Id. at ¶ 16.  According to Plaintiff, almost everyone on the unit witnessed the fall, including the block officer, CO Langley.  Id. at ¶ 17.  Plaintiff blames CO Langley for waxing the day room floor at 10:30 a.m. that day and describes this as a "poor decision" and that it was more than negligence because he knew or should have known that 10:30 a.m. is designated for inmate movement to the cafeteria.  Id. at ¶ 14.  Plaintiff states that in contrast to what "the officer claims" there were no warning signs posted.  Id. at ¶ 15.

Plaintiff alleges that the officers did not allow him to go to medical until after count had cleared, which was at approximately 1:00 p.m., and at which time Plaintiff's ankle was so swollen that it would no longer fit into his shoe.  Id. at ¶ 18.  Once count cleared, Plaintiff was allowed to "limp up to the medical department with no assistance besides the help of inmate Wyatt."  Id. at ¶ 19.  At medical, Plaintiff was seen by Nurse Miller[1] and PA Kaufman.  Id. at ¶ 20.  He claims that Nurse Miller filled out an incident report but did not conduct any type of examination and denied his request for pain medication.  Id. at ¶ 21.  Plaintiff then saw PA Kaufman at approximately 1:30 p.m.  Id. at ¶ 22.  He claims that PA Kaufman also failed to conduct an examination but issued him crutches, an ice bag and an ankle sleeve.  Id. at ¶ 22. Plaintiff claims that the ankle sleeve did not fit because of the swelling but PA Kaufman told him there was nothing else they could do for him.  Id.

---

[1] Plaintiff identifies Ms. Miller as a PA (physician assistant) but Defendants advise that she is a LPN.

The following day, Plaintiff was called to medical for an X-ray. Id. at ¶ 23. Once again he requested and was denied pain medication. Id. The X-ray revealed a fracture and Plaintiff was brought back to medical where he was seen by Dr. Mahmud who recommended that he be placed in the infirmary to await a walking boot. Id. Plaintiff again requested pain medication but was told by Dr. Mahmud that the medication would be handed out in the infirmary at 4:00 p.m., approximately one-and-a-half hours later. Id. at ¶ 24.

In the infirmary, Nurse Wiemer[2] informed Plaintiff that she would be the nurse providing him medical assistance. Id. at ¶ 25. Days later, on May 13, 2013, Plaintiff informed Nurse Wiemer that his foot was bumping into stationary objects, which was causing him pain, so he requested to have his ankle wrapped. Id. at ¶ 26. Two days later, on May 15, 2013, Plaintiff was seen by Dr. Mahmud and told that Nurse Wiemer would wrap his ankle until his boot arrived. Id. at ¶ 27. The next day, on May 16, 2013, Plaintiff spoke to Nurse Wiemer who said she was aware of Dr. Mahmud's decision to wrap his ankle but had not yet had time to get around to doing it. Id. at ¶ 28. That same day, Plaintiff filed a grievance complaining of inadequate medical care for his fractured ankle. Id. at ¶ 30. He complained that he had yet to receive any medical treatment for his ankle, except for Motrin three times a day, and complained that his ankle was never realigned, wrapped, or casted. Id. Plaintiff was released from the infirmary on May 18, 2013, with crutches but without the walking boot. Id. at ¶ 31. However, the walking boot arrived the following day. Id. at ¶ 32.

Plaintiff had another X-ray on July 2, 2013, and, on July 16, 2013, Dr. Mahmud informed Plaintiff that the bone had not yet healed and also that she detected a separate lesion on the bone that could possibly be cancer, a tumor or a cyst. Id. She told Plaintiff that this required further

---

[2] Plaintiff also identifies Ms. Wiemer as a PA but Defendants advise that she is a retired RN.

tests.  Id.  Additional X-rays were taken on August 7, 2013, August 21, 2013 and September 24, 2013.  Id. at ¶ 33.

Plaintiff saw cancer specialist, Dr. Malholtra, on October 3, 2013, who recommended that Plaintiff see an Orthopedic and have a MRI.  Id. at ¶¶ 34, 35.  Plaintiff had a MRI and bone imagery test performed on October 14, 2013, and October 29, 2013, respectively.  Id. at ¶ 36.

Petitioner was admitted to the infirmary on December 15, 2013.  Id. at ¶ 38.  The following day, he requested pain medication from PA Lottig who told Plaintiff that there was no pain medication ordered for him.  Id.  Later that day, Plaintiff filed a grievance complaining about the denial of pain medication.  Id.

On January 27, 2014, Plaintiff was taken to Johnstown Medical Center for a biopsy on the bone cyst.  Id. at ¶ 39.

In response to a sick call slip, Plaintiff was seen by Dr. Wilson on February 27, 2014.  Id. at ¶ 40.  Plaintiff complained about the pain in his ankle and Dr. Wilson advised that Plaintiff report his pain to Dr. Mahmud because he was only filling in, but Dr. Wilson did order additional X-rays and recommended that Plaintiff be scheduled to see an Orthopedic.  Id.  Those additional X-rays were taken the following day, on February 28, 2014.  Id. at ¶ 41.  In response to another sick call slip, Plaintiff was given an X-ray on March 28, 2014.  Id. at ¶ 42.

On April 3, 2014, Plaintiff was seen by Dr. Robinson who prescribed him Ibuprofen.  Id.

Plaintiff had another X-ray on April 21, 2014.  Id.  On May 13, 2014, Plaintiff was informed by PA Playcia that all his X-rays were sent to the Orthopedic.  Id. at ¶ 44.

On May 22, 2014, Dr. Mahmud advised, per the Orthopedic, that the fracture had healed and therefore Plaintiff no longer needed the crutches and walking boot.  Id.  Plaintiff continued

to complain of pain over the next couple of months, and, on July 16, 2014, Dr. Wilson prescribed him Ibuprofen and physical therapy.  Id. at ¶¶ 45, 46.

## II.       Standard of Review

Recently, the United States Court of Appeals for the Third Circuit aptly summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler, 578 F.3d at 213 (quotation marks and citations omitted); *see also* Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 117–18 (3d Cir.2013).

Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014).

When considering *pro se* pleadings, a court must employ less stringent standards than when judging the work product of an attorney.  Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged.  Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003).  In a §1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name."  Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)).  *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently

5

alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688).  Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim.  *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

The court must allow amendment by the plaintiff in civil rights cases brought under § 1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile."  Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); *see also* Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile).

III.    **Discussion**

Plaintiff's claims are as follows: (a) Against CO Langley: (1) deliberate indifference to inmate safety in violation of the Eighth Amendment to the U.S. Constitution, and (2) negligence under 42 Pa. C.S. § 8522(b)(4).  (ECF No. 3 at ¶¶ 50, 51.); (b) Against Nurse Miller and PA Kaufman: (1) deliberate indifference to serious medical needs in violation of the Eighth Amendment to the U.S. Constitution, and (2) medical malpractice.  (ECF No. 3 at ¶¶ 52, 53.); (c) Against Dr. Mahmud and Nurse Weimer: (1) deliberate indifference to serious medical needs in violation of the Eighth Amendment to the U.S. Constitution, and (2) medical malpractice.  (ECF No. 3 at ¶¶ 54, 55.); (d) Against Dr. Frazier: (1) violation of due process under the Fourteenth Amendment to the U.S. Constitution.  (ECF No. 3 at ¶ 56.); (e) Against Rozum: (1) violation of due process under the Fourteenth Amendment to the U.S. Constitution.  (ECF No. 3 at ¶¶ 56, 57.); (f) Against CHCA Hyde: (1) deliberate indifference to serious medical needs in violation of the Eighth Amendment to the U.S. Constitution.  (ECF No. 3 at ¶¶ 58, 60.); and (g) Against the

Pennsylvania Department of Corrections: (1) deliberate indifference in violation of the Eighth Amendment.  (ECF No. 3 at ¶¶ 59, 60.)

### 1. *Res judicata*

The claims against Miller, Kaufman, Mahmud, Weimer, Hyde, Langley, Frazier and Rozum are barred by the doctrine of *res judicata*, which consists of two preclusion concepts: issue preclusion and claim preclusion.  With respect to these Defendants, Plaintiff filed a complaint in the Court of Common Pleas of Somerset County that involved the same issues in this case and that was dismissed with prejudice by Judge Klementik on April 21, 2014, in connection with the denial of his motion for *in forma pauperis* status.  *See* (Memorandum and Order dated 4/21/14, ECF No. 3-3 at pp.1-6.)[3]  Plaintiff's appeal of that decision was dismissed by the Commonwealth Court in a *per curiam* decision dated September 22, 2014.  *See* (Commonwealth Docket Sheet for 1394 CD 2014, Defs.' Ex. 2, ECF No. 37-1 at pp.8-12.)

Judge Klemenitk's Pa. R.A.P. 1925 Opinion outlines the allegations that were contained in Plaintiff's state court complaint, and it leaves no doubt that the claims, issues and parties were virtually identical to the instant action.  *See* (Pa. R.A.P. 1925 Opinion dated 7/26/14, Defs.' Ex. 1, ECF No. 37-1 at pp.1-7.)

---

[3] Not only did Plaintiff attach to his Complaint documents relating to his prior state court action (ECF No. 3-3), but this Court may also take judicial notice of these documents because they are matter of public record, *see* Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

### a. The applicable law

The Full Faith and Credit Clause[4] of the United States Constitution requires the courts of one State to give preclusive effect to the judgments rendered by the courts of another State. Riley v. New York Trust Co., 315 U.S. 343, 348-49 (1942). "A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land" and "gains nationwide force." Baker v. General Motors Corp., 522 U.S. 222, 233 (1998). Federal courts are not *constitutionally* required to give preclusive effect to the judgments issued by state tribunals. Kremer v. Chemical Construction Corp., 456 U.S. 461, 483 n.24 (1982) (remarking that federal courts are "not included within the constitutional provision"). However, when a judgment is rendered by a state court, federal courts are *statutorily* required to accord that judgment preclusive effect under 28 U.S.C. § 1738. The applicable statutory language provides that "[t]he Acts of legislature of any State, Territory, or Possession of the United States . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738. "This statute has long been understood to encompass the doctrines of *res judicata*, or 'claim preclusion,' and collateral estoppel, or 'issue preclusion.'" San Remo Hotel, L.P. v. City & County of San Francisco, 545 U.S. 323, 336 (2005). A federal court must give a judgment issued by a state court the same preclusive effect that it would be accorded in the courts of the relevant state. Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 523 (1986).

---

[4] "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. CONST., Art. IV, § 1.

When federal courts are called upon to give preclusive effect to prior state court judgments, the governing law in such cases is the state law of preclusion from the state of the prior state court judgment. *See* 28 U.S.C. § 1738 (full faith and credit statute); Marrese v. America Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985) ("The statute [*i.e.*, Section 1738] directs a federal court to refer to the preclusion law of the State in which judgment was rendered. 'It has long been established that § 1738 does not allow federal courts to employ their own rules of *res judicata* in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken.'"); Hillary v. Trans World Airlines, Inc., 123 F.3d 1041, 1043 (8th Cir. 1997) (". . . 'it is fundamental that the *res judicata* effect of the first forum's judgment is governed by the first forum's law, not by the law of the second forum.'"). As such, federal law directs this Court to look to Pennsylvania state law in determining the requirements and effects of the doctrine of *res judicata*.

### b. **Final judgment**

Courts, including Pennsylvania state courts, have included in the description of *res judicata* a requirement that the earlier case have resulted in a "final judgment on the merits." *See*, *e.g.*, Knouse v. W.C.A.B. (G.O.D. Inc.), 886 A.2d 329, 335 n.10 (Pa. Cmwlth. 2005) ("*res judicata* provides that, when a final judgment on the merits exists, a future suit between the parties on the same cause of action is precluded."). However, a "final judgment on the merits" is not an inflexible requirement. Bearoff v. Bearoff Brothers, Inc., 327 A.2d 72, 75 (Pa. 1974) ("While the general rule for either collateral estoppel or *res judicata* to apply is that a final and valid judgment must have been entered, . . . this rule is not without exception.") (citing Kannel v. Kennedy, 94 F.2d 487, 488 (3d Cir. 1937), which held that "[i]t is the general rule that the

9

doctrine of *res judicata* does not apply in the absence of a final judgment. There are exceptions, however, to this rule."). Moreover, even where the requirement for "a valid final judgment on the merits" is applicable, what a "final judgment on the merits" means is very broad in Pennsylvania for purposes of applying *res judicata*. General Accident Fire & Life Assurance Corp. v. Flamini, 445 A.2d 770, 772 (Pa. Super. 1982) ("Pennsylvania law takes a broad view on what constitutes a 'final judgment' for purposes of *res judicata*.").

In Pennsylvania, the dismissal of an action for failure to state a claim has been held to be a final judgment on the merits. *See* Brown v. Conney, 442 A.2d 324, 326 (1982); Coggins v. Carpenter, 468 F. Supp. 270, 280 (E.D. Pa. 1979). In this case, the Court of Common Pleas of Somerset County found that Plaintiff "failed to set forth any arguable basis for a cause of action" and dismissed his case with prejudice. (ECF No. 3-3 at pp. 5-6.) This qualifies as an adjudication on the merits for purposes of *res judicata*.

### c. **The applicability of *res judicata***

The doctrine of *res judicata* provides that a final judgment rendered by a court of competent jurisdiction, on the merits, is conclusive as to the rights of the parties and their privies, and as to them constitutes an absolute bar to a subsequent action involving the same cause of action. In re Weisbrod & Hess Corp., 129 F.2d 114, 116 (3d Cir. 1942).

As explained by the Pennsylvania Supreme Court:

*Res judicata*, or claim preclusion, prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, **or could have been raised**, in the previous adjudication. R/S Financial Corporation v. Kovalchick, 716 A.2d 1228, 1230 (Pa. 1998). The doctrine of *res judicata* developed to shield parties from the burden of re-litigating a claim with the same parties, or a party in privity with an original litigant, and to protect the judiciary from the corresponding inefficiency and confusion that re-litigation of a claim would breed. Id.

Wilkes v. Phoenix Home Life Mut. Ins. Co., 902 A.2d 366, 376 (Pa. 2006) (emphasis added).  In

order for the doctrine of *res judicata* to apply under Pennsylvania law, the two actions must

share the following four conditions: "(1) the thing sued upon or for; (2) the cause of action; (3)

the persons and parties to the action; and (4) the capacity of the parties to sue or be sued."

Turner v. Crawford Square Apts. III, L.P., 449 F.3d 542, 548 (3d Cir. 2006) (citing Bearoff, 327

A.2d 72 (1974)).  While these four prongs are to be analyzed, the courts of Pennsylvania have

cautioned against giving them a too literal interpretation.  *See*, *e.g.*, Radakovich v. Radakovich,

846 A.2d 709, 715 (Pa. Super. 2004) ("The purpose behind the doctrine, which bars the re-

litigation of issues that either were raised or could have been raised in the prior proceedings, are

to conserve limited judicial resources, establish certainty and respect for court judgments . . . .  In

keeping with these purposes, the doctrine must be liberally construed and applied without

technical restriction.").  In accordance with the purpose of the doctrine, the Court considers the

four prongs.

      As to the first prong, described as the "identity of the thing sued upon" or "identity of

subject matter,"[5] the Court finds that the "thing sued for" in both the Somerset County lawsuit

and the present lawsuit are the same; the fall Plaintiff sustained on May 6, 2013, and subsequent

medical care thereafter.  *See*, *e.g.*, Gregory v. Chehi, 843 F.2d 111, 116-17 (3d Cir. 1988)

("Isolating the alleged wrongful act is critical to the first requirement [of *res judicata*] – identity

of subject matter.  In this case, a single event, the November 1, 1985 discharge, gave rise to both

state and federal actions.  Because that same occurrence underlies both suits, the first prerequisite

of claim preclusion is met."); O'Brien v. Valley Forge Specialized Educational, No. 03-3984,

2004 U.S. Dist. LEXIS 20655, 2004 WL 2316425, at *8 (E.D. Pa. Oct. 13, 2004) ("When the

---

[5] In re Estate of Tower, 343 A.2d 671, 674 (Pa. 1975) (describing the first prong as "identity of
the thing or subject matter sued for").

'same occurrence underlies both suits,' this requirement [of identity of the thing sued upon] is met."); Jett v. Beech Interplex, Inc., No. 02-9131, 2004 U.S. Dist. LEXIS 13352, 2004 WL 1588230, at *3 (E.D. Pa. July 15, 2004) ("The first factor for this Court to consider is the similarity of the thing sued upon in both Jett I and Jett II. In this case, the operative facts and the subject matter of this action are identical to the prior State Court proceedings . . . . Thus, this Court concludes that the first element of the *res judicata* doctrine is satisfied.") (citations omitted); RegScan, Inc. v. Brewer, No. 04-6043, 2006 U.S. Dist. LEXIS 6412, 2006 WL 401852, at *7 (E.D. Pa. Feb. 17, 2006) ("in comparing the 'thing sued upon' in the state and federal actions, the Court concludes that based on all of the above, the operative facts and the subject matter are closely aligned, and the first element of the *res judicata* doctrine is satisfied.").[6] The facts and subject matter of this action are the same as Plaintiff's prior state court lawsuit. Therefore, this prong is satisfied.

As to the second prong, the "identity of the cause of action", the Third Circuit Court of Appeals has held that, applying *res judicata* to a prior Pennsylvania state court decision, as this Court is now, "*res judicata* generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims." Davis v. United States Steel Supply, 688 F.2d 166, 171 (3d Cir. 1982); *see also* Greenberg v. Potomac Health Sys., 869 F. Supp. 328, 331 (E.D. Pa. 1994) ("Whether a cause of action is the same depends on the 'essential similarity of the underlying events,' rather than on the specific legal theories invoked.'"); McArdle v. Tonetti, 627 A.2d 1219, 1222 (Pa. Super. Ct. 1993) ("As to the identity of cause[s] of action, rather than resting upon the specific legal theory invoked, *res judicata* generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims.").

---

[6] All of the preceding federal cases cited in this section, addressing the "identity of issues," were construing Pennsylvania law of *res judicata*.

Here, the underlying events giving rise to Plaintiff's various legal claims in this case are identical

to those in his prior state court lawsuit. Therefore, this prong is satisfied.

As to the third and fourth prongs, "identity of parties and capacities", the Court finds that

these prongs are satisfied as to all Defendants named in this lawsuit except for the Pennsylvania

Department of Corrections and Wexford Health Services, who were not parties to Plaintiff's state

court lawsuit.

To summarize, the Court of Common Pleas of Somerset County issued a final judgment

on the merits in Plaintiff's case when they dismissed it for failure to state a cause of action.

Additionally, the four conditions that must be satisfied in order for the doctrine of *res judicata* to

apply have easily been met in this case. Thus, Defendants Langley, Miller, Kaufman, Frazier,

Wiemer, Dr. Mahmud, Rozum and Hyde are all entitled to dismissal from this action with

prejudice.[7]

## 2. Pennsylvania Department of Corrections

Plaintiff's claims against the Pennsylvania Department of Corrections are barred by the

Eleventh Amendment to the U.S. Constitution. In 1890, the Supreme Court held that the

Eleventh Amendment prohibits suits by citizens against their own state. *See* Hans v. Louisiana,

134 U.S. 1 (1890). As a result, private parties may not sue a state or state agency by name in

federal court unless Congress validly abrogates state sovereign immunity or the state waives its

immunity. *See* Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984).

---

[7] In response to the Defendants' *res judicata* argument, Plaintiff maintains that he was not given
a "full and fair hearing in state court" because he was not afforded the opportunity to amend his
complaint to state a cognizable claim. *See* ECF No. 44 at p.4. However, there is nothing in the
elements of *res judicata* that mandates a state court give the right to amend a defective complaint
or prohibits its application in the event that the state court does not allow for amendment.

State sovereign immunity also extends to state agencies.  Id.  It is well settled that the

Department of Corrections is an agency or arm of the state, and therefore, entitled to the same

Eleventh Amendment immunity which the Commonwealth enjoys.[8]  *See* Lavia v. Pennsylvania,

Dept. of Corrections, 224 F.3d 190, 195 (3d Cir. 2000) ("Because the Commonwealth of

Pennsylvania's Department of Corrections is a part of the executive department of the

Commonwealth, *see* Pa. Stat.Ann., tit. 71 § 61, it shares in the Commonwealth's Eleventh

Amendment immunity.")  Here, the Commonwealth did not consent to suit and Congress has not

abrogated its sovereign immunity.  Therefore, the Pennsylvania Department of Corrections is

entitled to Eleventh Amendment immunity.  Moreover, as a state agency, the Department of

Corrections is not a "person" and thus cannot be sued under 42 U.S.C. § 1983.  Will v. Michigan

Dep't of State Police, 491 U.S. 58, 71 (1989).  For these reasons, they will be dismissed from

this action with prejudice.

### 3.    Wexford Health Services[9]

Plaintiff's Complaint contains no allegations directly related to Wexford Health Services

apart from identifying it as the medical provider at SCI-Somerset.  *See* ECF No. 3 at ¶ 12.  In

fact, Wexford is not mentioned anywhere in the Complaint except for this one instance.  As a

consequence, Wexford seeks dismissal because Plaintiff is attempting to establish their liability

on the grounds of vicarious liability or *respondeat superior*, which is impermissible.  *See* Natale

v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (because *respondeat superior*

and vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under

---

[8] Plaintiff has sued each named Defendant in their official capacity in addition to their individual capacity, but the agency's immunity also extends to individual defendants sued in their "official" capacities.  *See* O'Donnell v. Department of Corrections, 790 F.Supp.2d 289, 305 (M.D. Pa. 2011).

[9] Plaintiff incorrectly identifies this Defendant as "Wexler Health Services".

contract with the state cannot be held liable for the acts of its employees and agents under those theories).

A private corporation acting on behalf of the state, such as Wexford Health Services, may be held liable under section 1983 only where it has instituted a policy or custom that caused the Plaintiff's constitutional injury. *See* Natale, 318 F.3d at 583-84.

Here, there are no allegations that Wexford had an affirmative policy or custom that caused Plaintiff's alleged constitutional injury. Therefore, they are entitled to dismissal.

### 4.   **Defendants PA Kaufman and Dr. Mahmud**

Counsel for Defendants Dr. Mahmud, PA Kaufman and Wexford Health Services filed only a Partial Motion to Dismiss, failing to argue that two of his clients, Dr. Mahud and PA Kaufman, are barred from suit pursuant to the doctrine of *res judicata*. However, under the Prison Litigation Reform Act ("PLRA"), federal courts are granted the authority to *sua sponte* dismiss claims in *in forma pauperis* proceedings if the court determines that a claim is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A, 1915(e)(2)(B)(i)-(iii). Plaintiff requested and has been granted leave to proceed *in forma pauperis*. Thus, this Court has the authority to *sua sponte* dismiss his claims against Defendants PA Kaufman and Dr. Mahmud for Plaintiff's failure to state a claim because, like the individual Department of Corrections Defendants, they too are barred from suit pursuant to the doctrine of *res judicata*. *See*, *supra*, § III.1.

### 5.   **Amendment of Complaint**

The court must allow amendment by the plaintiff in civil rights cases brought under § 1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless

15

doing so would be "inequitable or futile."  Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); *see also* Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile).  We are cognizant of these holdings, but find that allowing for amendment by Plaintiff would be futile.  A careful review of the record commands that Plaintiff, even garnering all the liberalities that accompany his *pro se* status, fails to state any claims under § 1983 for which relief may be granted.

The following Order is now entered.

**AND NOW** this 18th day of December, 2015;

**IT IS HEREBY ORDERED** that the Motion to Dismiss filed Defendants Langley, Miller, Frazier, Wiemer, Rozum, Hyde and the Pennsylvania Department of Corrections (ECF No. 36) is **GRANTED** to the extent that the individual Defendants are barred from suit pursuant to the doctrine of *res judicata* and the Pennsylvania Department of Corrections is entitled to Eleventh Amendment immunity.

**IT IS FURTHER ORDERED** that the Partial Motion to Dismiss filed by Defendants Kaufman, Dr. Mahmud, and Wexford Health Services (ECF No. 40) is **GRANTED** only to the extent that Wexford Health Services is entitled to dismissal.

**IT IS FURTHER ORDERED** that, pursuant to the Court's authority under 28 U.S.C. § 1915(e)(2)(B)(ii), Defendants Kaufman and Dr. Mahmud are dismissed for Plaintiff's failure to state a claim against them as they are barred from suit pursuant to the doctrine of *res judicata*.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** with prejudice and the Clerk of Court shall mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that, pursuant to Rule 4(a)(1) of the Federal Rules

of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by

Rule 3 of the Federal Rules of Appellate Procedure.

Lisa Pupo Lenihan
United States Magistrate Judge

Cc:    Kendall Curry
        HG-8533
        SCI Somerset
        1600 Walters Mill Road
        Somerset, PA  15510
        (Via First Class U.S. Mail)

        All counsel of record
        (Via CM/ECF electronic mail)